UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Mark Changizi, Michael P. Senger, Daniel Kotzin,**<br><br>Plaintiffs,<br><br>v.<br><br>**Department of Health and Human Services, Vivek Murthy, in his official capacity as United States Surgeon General, Xavier Becerra, in his official capacity as Secretary of the Department of Health and Human Services,**<br><br>Defendants. | Civil Docket No. 2:22-cv-01776 |

**RESPONSE TO PLAINTIFFS' RULE 60(b) MOTION**

Plaintiffs ask this Court to vacate its final judgment based on "new evidence" that is analogous to the evidence Plaintiffs previously relied on and thus does nothing to cure the many defects the Court found in their Complaint. The Court should reject Plaintiffs' request.

Plaintiffs brought suit claiming that the disciplinary actions that Twitter took against them were attributable to the federal government based on certain general statements by the U.S. Surgeon General about the harms of, and strategies for addressing, misinformation. The Court dismissed Plaintiffs' suit after concluding that they did not establish standing, principally because there was no indication that the precise disciplinary actions Twitter took (or will take) against them were (or will be) caused by the Surgeon General's statements rather than Twitter's longstanding misinformation policies that predate the current Administration. The Court also concluded that, in any event, all of Plaintiffs' claims lacked merit.

1

Plaintiffs now move the Court to vacate its final judgment pursuant to Rule 60(b)(2) based on "new evidence" indicating that officials at the Department of Homeland Security ("DHS") have made statements concerning misinformation similar to those made by the Surgeon General. The Court should deny Plaintiffs' motion. First, as a threshold matter, Plaintiffs have already appealed the Court's final judgment, and so the Court lacks jurisdiction to resolve the Rule 60(b) motion. Second, Plaintiffs' motion lacks merit because the "new evidence" indicates only that, like the Surgeon General, DHS officials had generally spoken of the harms of misinformation and proposed a number of strategies for containing misinformation. That evidence does not dispute that Twitter, and other social media companies, have been fighting misinformation for years now, and have chosen to do so independently of any statements made by federal government officials. The "new evidence" does not indicate that any DHS official caused, much less forced, Twitter to adopt any policy. Nor does it indicate that any DHS official spoke with Twitter about any Plaintiff in particular. If the allegations and documents Plaintiffs previously relied upon concerning the Surgeon General were insufficient to survive a motion to dismiss, the same must be true with respect to the comparable "new evidence" Plaintiffs submit now concerning DHS. The Court should deny Plaintiffs' Rule 60(b) motion.

## BACKGROUND

1. On March 24, 2022, Plaintiffs—three individual Twitter users—brought suit against Surgeon General Murthy, the Department of Health and Human Services ("HHS"), and HHS Secretary Becerra. Plaintiffs alleged that they had suffered a number of disciplinary actions by Twitter, and that those actions were attributable to the federal government. *See* MTD Order, at 2-3. In particular, Plaintiffs claimed that the Surgeon General somehow forced Twitter to take those disciplinary actions through his publication of two non-binding documents: (i) a health advisory

discussing the harms of, and strategies for addressing, misinformation, and (ii) a public request for information ("RFI") concerning misinformation. *See* MTD Order, at 9, 12. Plaintiffs thus argued that the disciplinary actions Twitter took against them amounted to "state action" that violated Plaintiffs' First Amendment rights. Plaintiffs also asserted a Fourth Amendment claim, an ultra vires claim, and an APA claim. *See* MTD Order, at 3.

On March 30, 2022, Plaintiffs moved for a preliminary injunction, and on April 15, 2022, Defendants both responded to the preliminary injunction motion and moved to dismiss Plaintiffs' claims. The Court held an evidentiary hearing on April 28, 2022, and on May 5, 2022, the Court dismissed Plaintiffs' claims in full, concluding that Plaintiffs lacked standing and that, in any event, their claims lacked merit. With respect to standing, the Court first found that Plaintiffs' allegations did not show that the actions Twitter took against them were caused by Defendants rather than Twitter's independent judgment. The Court noted that there were many reasons why Twitter would independently decide to try and contain misinformation, including "widespread societal concerns about online misinformation," a fear of "losing . . . revenue" from "advertisers (or other users) who do not want to be associated with a company that passively allows misinformation to spread," or a genuine belief that it should "prioritize tackling the spread of perceived COVID-19 mistruths." MTD Order, at 19, 22 n.5 (internal quotation marks omitted). The Court also noted that Twitter had been tackling information for years—since before this Administration began—thus further undermining any inference that the actions Twitter took against Plaintiffs were driven by anything an official in this Administration had said. *See id.* at 7, 16. The Court further noted that, in addition to their failure to establish the requisite causal link, Plaintiffs had failed to show that a favorable ruling would redress their alleged injuries. *See id.* at 21-22. The Court found that there was no indication that Twitter would cease "enforc[ing] . . . its

3

COVID-19" misinformation policy simply because certain government actors are enjoined from making certain statements concerning misinformation. *Id.*

The Court also found that, even if Plaintiffs had standing, their claims failed on the merits. First, the Court noted that the First Amendment claim failed because Plaintiffs did not show that the relevant actions taken by Twitter—a private company that is not subject to the First Amendment—were attributable to the federal government. The Court found that, to hold the federal government liable for Twitter's actions towards Plaintiffs, Plaintiffs had to, but did not, adequately allege that a federal government actor had *coerced* Twitter into taking *those precise actions*. *See* MTD Order, at 23-24. The court noted that the Surgeon General documents that Plaintiffs relied upon were non-binding and did not require Twitter to take any action. *See id.* at 26-28. The Court also reasoned that Plaintiffs made no concrete allegation indicating that any Defendant had "specifically targeted" any Plaintiff. *Id.* at 27.

Second, the Court found that the Fourth Amendment claim failed because the RFI did not constitute a "search" under the Fourth Amendment because it was simply a *request* for information; no party was legally obligated to respond to the RFI. *See id.* at 28-31. Third, the Court rejected the APA claim because neither the Surgeon General's advisory nor his RFI imposed any legal obligation on any party, and thus did not constitute "final agency action." *See id.* at 33. The Court then rejected the ultra vires claim for a similar reason: an agency needs no statutory authority to issue "non-binding [policy] statements," and "the [advisory] and RFI [are] non-binding policy statements." *Id.* at 34. The Court accordingly dismissed the complaint and denied the preliminary injunction motion as moot.

2.  Plaintiffs now move for relief under F.R.C.P. 60(b)(2), asking the Court to vacate its final judgment based on a handful of new documents that, in their view, cure the many defects in their

4

legal theories. Plaintiffs submit three principal, new documents concerning certain efforts by DHS to address misinformation. First, Plaintiffs submit a September 13, 2021 DHS memorandum describing certain DHS "[e]fforts to [c]ounter [d]isinformation." ECF No. 42-1, at 6. The memorandum first notes that several types of misinformation "present[] serious homeland security risks," including election-related "[c]onspiracy theories" that result in "threats against election personnel," false "narratives" spread by "[f]oreign terrorists" and other "violent extremist[s]" that "amplify calls to violence," "[f]alsehoods surrounding . . . immigration policy," and misinformation concerning "COVID-19 vaccines." *Id.* The memorandum then describes certain DHS efforts to address misinformation, including a website it operates to counter "incorrect claims" by providing "factual information." *Id.* at 8. The memorandum discusses how DHS may "structure" anti-misinformation "efforts moving forward," but stresses that DHS "should not attempt to be an all-purpose arbiter of truth in the public arena" and that it must "ensure [that] its" misinformation "efforts do not have the effect of chilling or suppressing free speech." *Id.* at 6-8.

Plaintiffs also refer to a January 13, 2022 DHS memorandum concerning its "Disinformation Governance Board" (the "Board"), which has since been suspended. *See id.* at 1, 11. According to this memorandum, the Board's purpose was to, among other things, help identify, assess, and respond to misinformation threats, which could include serving as a "point of contact" for relevant "private sector" entities. *Id.* at 14-16. The memorandum states that the Board would "ensure . . . adherence to applicable constitutional . . . obligations." *Id.* at 15. The Board, however, is not currently operating. *See id.* at 1 (noting that the Board has been "recently-paused"). Finally, Plaintiffs refer to a draft set of talking points, dated April 28, 2022, for a meeting between a DHS official and certain Twitter employees. According to the draft talking points, the purpose of the

meeting was, in part, to determine "what types of . . . information would be useful to Twitter" and the "ways [DHS] could be helpful to Twitter's [misinformation] efforts." *Id.* at 18.

None of these documents indicates that DHS ordered Twitter to adopt any particular policy, nor do they suggest that DHS specifically instructed Twitter to take any particular action against any Plaintiff in particular.

3. On June 30, 2022, Plaintiffs filed a notice of appeal from this Court's Order dismissing this action. *See* ECF No. 43. On June 30, 2022, the Sixth Circuit issued an order indicating that Plaintiffs' appeal would be "held in abeyance" pursuant to "Fed. R. App. P. 4(a)(4)" until "after the district court rule[d] on [the] pending [Rule 60(b)] motion[]" and "jurisdiction transfers to the Sixth Circuit Court of Appeals." Notice, Case No. 22-3573, *Changizi v. HHS*, Doc. 3 (June 30, 2022). However, the filing of a Rule 60(b) motion triggers abeyance only "if the motion is filed no later than 28 days after the judgment is entered." F.R.A.P. 4(a)(4)(A)(vi). In this case, Plaintiffs filed their motion more than 28 days after entry of the judgment, and hence FRAP 4(a)(4) does not apply. The Sixth Circuit therefore issued an Order on July 5, 2022, stating that "[t]his case was inadvertently docketed under Fed. R. App. P. 4(a)(4), [and that] the case is resumed and returned to the active docket." Order, Case No. 22-3573, *Changizi v. HHS*, Doc. 5-2 (July 5, 2022).

## ARGUMENT

The Court should deny Plaintiffs' request for Rule 60(b) relief from the final judgment because the Court lacks jurisdiction to provide that relief and, in any event, Plaintiffs do not satisfy the requirements for Rule 60(b) relief.

**I.     The Court does not have jurisdiction to rule on the Rule 60(b)(2) motion.**

"It is well settled in this Circuit that the filing of a notice of appeal divests the district court of jurisdiction and transfers jurisdiction to the court of appeals." *Agristor Leasing v. Hermitage*

*Harvistore Sys., Inc.*, 849 F.2d 608 (6th Cir. 1988). Thus, "[a]bsent a remand by the appellate court, a district court may not decide a Rule 60(b) motion to vacate judgment after notice of appeal has been filed." *Id.*; *see also Pickens v. Howes*, 549 F.3d 377, 383 (6th Cir. 2008) ("filing of a notice of appeal operates to transfer jurisdiction of the case to the court of appeals, and the district court is thereafter without jurisdiction to grant a motion under Fed.R.Civ.P. 60(b)"); *Smith v. Combustion Eng'g, Inc.*, 843 F.2d 1392 (6th Cir. 1988) ("Absent remand by the appellate court, a district court is without jurisdiction and may not decide a 60(b) motion after the notice of appeal has been filed."). Here, Plaintiffs have already appealed the Court's final judgment, and so the Court lacks jurisdiction to decide the Rule 60(b)(2) motion.

**II.     Plaintiffs do not meet the requirements for Rule 60(b)(2) relief.**

Even if the Court had jurisdiction to resolve Plaintiffs' motion, they would not be entitled to Rule 60(b)(2) relief. "In order to prevail on a Rule 60(b)(2) motion, a movant must demonstrate" that the allegedly new evidence "is *material and controlling* and *clearly* would have produced a different result if presented before the original judgment." *Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998) (emphasis added). "[R]elief [under] Rule 60(b)(2)" is "extraordinary," and should "only to be granted in exceptional circumstances." *Id.*

Here, the "new evidence" Plaintiffs have submitted concerning DHS's anti-misinformation efforts would not cure the deficiencies in Plaintiffs' complaint, and thus would not have "clearly . . . produced a different result" if it had been presented "before the [Court's] original judgment." *Id.* Indeed, that evidence indicates only that DHS engaged in certain general anti-misinformation efforts comparable to those of the Surgeon General. Thus, that evidence likewise fails to show that Plaintiffs have standing or that their claims are viable.

1. Plaintiffs' "new evidence" does not show that DHS caused (or will cause) Twitter to take any action against Plaintiffs, or that a favorable ruling would redress any of Plaintiffs' alleged injuries. To start, Plaintiffs fail to show that any actions Twitter has taken (or will take) against Plaintiffs has been (or will be) caused by DHS's general anti-misinformation efforts rather than Twitter's independent, discretionary judgments. As the Court has already noted, there are many reasons why Twitter would independently target misinformation, and Twitter's longstanding practices show that it decided to combat misinformation long before (and independently of) any of the cited DHS efforts to combat misinformation. *See supra* at 3. None of Plaintiffs' new documents suggests that Twitter took action against Plaintiffs specifically because of DHS's general anti-misinformation efforts. To the contrary, those documents suggest that, in attempting to address misinformation, DHS has strived to ensure that it would not serve as "an all-purpose arbiter of truth in the public arena" and that it would seek to respect "First Amendment protected activity." ECF No. 42-1, at 6-7.

Regardless, even if those documents somehow suggested that Twitter has been, or will be, motivated to take action against Plaintiffs because of DHS's efforts, that alone would be insufficient to establish causation. The Sixth Circuit has made clear that "harms result[ing] from the independent action of some third party not before the court are generally not traceable to the defendant." *Turaani v. Wray*, 988 F.3d 313, 316 (6th Cir.), *cert. denied*, 142 S. Ct. 225 (2021). A "third party's legitimate discretion breaks the chain of constitutional causation." *Id.* at 317; *see id.* ("an injury that results from the third party's *voluntary and independent actions* does not establish traceability" (emphasis in original)). Here, of course, none of the new documents indicates that DHS stripped Twitter of its ultimate authority over enforcement actions on its platform. Thus, Twitter's past, and potentially future, disciplinary actions against Plaintiffs flowed (and will flow)

8

from Twitter's "legitimate discretion," which "breaks the chain of constitutional causation." *Id.* at 317. Plaintiffs' new evidence therefore does not establish the requisite causal link.

Further, the new evidence also does not undermine the Court's conclusion that Plaintiffs have failed to establish that a favorable decision would redress their alleged injuries. The new evidence does not suggest that, if the Court were to issue relief limiting the anti-misinformation efforts of certain government agencies, Twitter, or any other social media company, would abruptly abandon their longstanding misinformation policies. Indeed, the new evidence says nothing about the motivations behind social media companies' misinformation efforts. Accordingly, even with their new evidence, Plaintiffs still lack standing.

2. In any event, even with their new evidence, Plaintiffs' claims would fail on the merits. First, as the Court acknowledged, to state a constitutional claim against a government actor based on private conduct, the government actor must have coerced, or encouraged to a degree amounting to coercion, the private actor to take the precise action at issue. *See* MTD Order, at 23; *id.* at 27 (Plaintiffs' claim fails because Defendants did not "specifically target[]" Plaintiffs by telling "Twitter that Plaintiffs' posts in particular contain misinformation, or defin[ing] 'misinformation' in a manner that would necessarily include Plaintiffs' posts"). Here, Plaintiffs' new evidence does not indicate that DHS has coerced, or effectively coerced, Twitter into taking any action. Rather, the evidence shows only that DHS has promoted general strategies for addressing misinformation, and has asked social media companies about how DHS can assist in their anti-misinformation efforts. *See supra* at 4-6. Additionally, the new evidence also does not suggest that DHS "specifically targeted" Plaintiffs' Twitter posts. Accordingly, Plaintiffs' new evidence does not salvage their First Amendment claim.

9

Second, Plaintiffs' Fourth Amendment claim still fails because that claim was based entirely on the Surgeon General's RFI. Plaintiffs do not suggest that anything DHS has done amounts to an unconstitutional search. Third, Plaintiffs' new evidence does not save their APA and ultra vires claims because the DHS anti-misinformation efforts are *non-binding*, just like the Surgeon General's non-binding anti-misinformation efforts that, as the Court found, did not give rise to viable APA and ultra vires claims. *See supra* at 4. None of Plaintiffs' new evidence suggests that any DHS anti-misinformation effort has imposed any legal obligation on any party. Accordingly, that evidence does not show that DHS acted in excess of its authority, or that it engaged in any "final agency action" reviewable under the APA.

Plaintiffs have not identified any new evidence that "is *material and controlling* and *clearly* would have produced a different result if presented before the original judgment." *Ohio Edison Co.*, 149 F.3d at 423 (emphasis added). Plaintiffs therefore are not entitled to "extraordinary" Rule 60(b)(2) relief.[1]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Rule 60(b) relief.

Dated: July 14, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ERIC BECKENHAUER
Assistant Director, Federal Programs Branch

*/s/ Kuntal Cholera*

KUNTAL CHOLERA
Trial Attorney

---

[1] To secure Rule 60(b)(2) relief, " a movant must" also "demonstrate . . . that it exercised due diligence in obtaining the" new evidence. *Ohio Edison Co.*, 149 F.3d at 423. Here, Defendants currently lack sufficient information to determine whether Plaintiffs could have accessed the new evidence at issue prior to the Court's final judgment.

10

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
Kuntal.Cholera@usdoj.gov

*Attorneys for Defendants*