IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

MARK CHANGIZI, et al.,

*Plaintiffs*,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,

*Defendants*.

CASE NO: 2:22-cv-1776

### REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60(b)

Plaintiffs respectfully submit this reply to Defendants' opposition (ECF No. 48) ("Def. Opp.") to Plaintiffs' motion for relief from judgment pursuant to Rule 60(b) requesting that the Court reinstate this case to its docket (ECF No. 42) (the "Motion").

### ARGUMENT

Defendants' claim that Plaintiffs have not satisfied the requirements of Rule 60(b) is without merit. First, Defendants rely on the spurious contention that this Court lacks jurisdiction to consider the motion, and so it should be denied. But Defendants fail to address the plethora of case law, not to mention the federal rules, endowing the Court with authority to *consider* the motion and convey its intended ruling to the Court of Appeals. Defendants argue in the alternative that Plaintiffs' new evidence, which they fail to address in any meaningful way, is insufficient for purposes of Rule 60(b) relief.

1

I.  **The Court Should Consider Plaintiffs' Motion**

Defendants' contention that the Court lacks authority to entertain the Motion is wrong and misconstrues the governing legal authority. Defendants ignore the substantial body of law that instructs district courts, in circumstances such as these, to *consider* a Rule 60(b) Motion and convey its intended ruling to the Court of Appeals.

Typically, the filing of a notice of appeal "confer[s] jurisdiction to the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). However, under the Federal Rules of Appellate Procedure, a notice of appeal that is filed while a Rule 60(b) motion remains outstanding in the district court "becomes effective" only after that motion is resolved. Fed. R. App. P. 4(a)(4)(B)(i); *see also Stone v. I.N.S.*, 514 U.S. 386, 402-403 (1995) (district courts retain jurisdiction to adjudicate certain post-judgment motions, including those filed under Rule 60(b)). The rules are clear that a Rule 60(b) motion made while an appeal is pending must be filed in the *district court*, rather than the court of appeals. *See Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002) (dismissing Rule 60(b) motion made directly to court of appeals on the ground that motion was not first filed in the district court).

Indeed, according to the Advisory Committee notes on the 1993 amendment to FRAP 4(a)(4), a "notice [of appeal] filed … after the filing of a motion [including a Rule 60(b) motion] but before disposition of the motion is, in effect, suspended until the motion is disposed of"—and it is only thereafter that "the previously filed notice effectively places jurisdiction in the court of appeals." Fed. R. App. P. 4(a)(4) Advisory Committee Notes (1993); *see also Craig v. Mackie*, No. 2:17-CV-12830, 2021 WL 608738, at *2 (E.D. Mich. Jan. 29, 2021) ("Where a notice of appeal is filed before the [District] Court decides a timely Rule 60(b) motion, 'the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.'").

Thus, contrary to Defendants' contention, the district court is not wholly divested of the ability to *consider* or *decide* a Rule 60(b) motion (to be contrasted with *granting* the Motion) after filing of a notice of appeal. *See Pickens v. Howes*, 549 F.3d 377, 383 (6th Cir. 2008) ("the Sixth Circuit has set forth specific procedures for a district court that wishes to intervene after a case has been appealed … if the district judge believes there should be relief from the judgment, the district court is to indicate that it would grant the motion"; internal citations and quotation marks omitted); *First National Bank of Salem, Ohio v. Hirsch*, 535 F.2d 343 (6th Cir. 1976) ("If the district judge is disposed to grant the motion, he may enter an order so indicating and the party may then file a motion to remand in [the appellate court]"). Even if the district court is without jurisdiction to *grant* a Rule 60(b) motion, "it must as an initial matter entertain it and make a request to the court of appeals." *See Pickens*, 549 F.3d at 384 (citing *LSJ Inv. Co., Inc. v. O.L.D., Inc.*, 167 F.3d 320, 324 (6th Cir. 1999) ("[A] lower court *may* entertain a motion for relief from judgment filed during the pendency of an appeal.")); *Dobrowiak v. Convenient Family Dentistry, Inc.*, No. 04-73495, 2008 WL 450474, at * 1 n. 2 (E.D. Mich. Feb.15, 2008) ("[T]he Sixth Circuit has recognized that district courts have at least some discretion to entertain a motion for relief from judgment notwithstanding a pending appeal."); *Reeves v. Jensen*, No. 5:04-cv-194, 2007 WL 2381942, at *1 (W.D. Mich. Aug.17, 2007) ("Notwithstanding this court's lack of jurisdiction to rule on plaintiff's motion, case law indicates that it would be proper for the court to indicate whether it would be inclined to grant the motion."). Such an "indication" then informs the decision of the Court of Appeals. This Court must therefore resolve the matter by acting on the Motion.

Notably, Defendants cite only three cases to support their argument that this Court lacks jurisdiction to rule on Plaintiffs' Motion, two of which were decided in 1988—prior to the 1993 amendment of FRAP 4(a)(4), as discussed above. *See* Def. Opp., ECF No. 48, at 6-7 (citing *Agristor Leasing v. Hermitage Harvistore Sys., Inc.*, 849 F.2d 608 (6th Cir. 1988) and *Smith v. Combustion Eng'g, Inc.*, 843 F.2d 1392 (6th Cir. 1988)). Thus, those cases have been effectively superseded by the amendment

3

and are no longer controlling law. Defendants' third case, *Pickens*, expressly provides for the district court to consider the motion and signal an intent to grant it to the Court of Appeals, as discussed.[1]

In sum, a litigant faced with an unfavorable district court judgment must file a Rule 60(b) motion with the district court while appealing that judgment within the time allotted by Federal Rule of Appellate Procedure 4 (in this case, 60 days from the order of dismissal), whether or not the litigant first files a Rule 60(b) motion, and even "where the Rule 60 motion is filed more than [now 28 days] following judgment." *See* Fed. R. App. P. 4(a)(4)(A*; see also Stone*, 514 U.S. 386, at 401. Plaintiffs have done just that, filing the Rule 60(b) Motion directly with the district court and timely filing the notice of appeal. Read together, according to the applicable Supreme Court and Sixth Circuit precedent (including each case cited in Defendants' response), as well as the Federal Rules, this Court retains discretion to enter an order indicating an intent to grant the Motion so that the Sixth Circuit may remand the case to the district court. Accordingly, Defendants' argument that the Court should deny the Motion for lack of jurisdiction is without merit.

## II. Plaintiffs Meet the Requirements Under Rule 60(b)(2) to Obtain Judgment from Final Relief

The Motion details Plaintiffs' newly discovered evidence, establishing that it readily meets the requirements for obtaining relief under Rule 60(b)(2), as the new evidence: (1) could not have been discovered with reasonable diligence in time to move for a new trial; (2) is material and would have resulted in a different outcome had it been presented to the Court prior to the April 28, 2022 hearing;

---

[1] Defendants also assert that, because Plaintiffs filed the 60(b) Motion over 28 days after the Court entered its final judgment, Plaintiffs' appeal should not be "held in abeyance" pursuant to FRAP 4(a)(4). *See* Def. Opp., ECF No. 48, at 6 (pointing out that the Sixth Circuit issued an order on July 5, 2022, stating that the case was inadvertently docketed under FRAP 4(a)(4)). Plaintiffs do not dispute that filing a Rule 60(b) motion triggers abeyance only "if the motion is filed no later than 28 days after the judgment is entered." Fed. R. App. P. 4(a)(4)(A)(vi). Certainly, had Plaintiffs filed the Motion within that timeframe, that would have tolled Plaintiffs' time to file an appeal. However, given Plaintiffs' timely filing of the notice of appeal, it is unclear what bearing Defendants' contention has on this Court's jurisdiction and ability to consider the Motion.

and (3) pertains to facts that existed at the time of the Court's ruling on Defendants' motion to dismiss. *See* ECF No. 42 (citing *Bilski v. McCarthy*, 790 F. App'x 756, 765 (6th Cir. 2019) (citing *Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998))). Defendants' response, however, glosses over the underlying facts and significance of Plaintiffs' new information, including direct evidence of the government's "mission" and extensive efforts to direct private tech companies, including Twitter and other social media platforms, to combat and suppress "misinformation." Yet this is precisely the sort of information that this Court found lacking in the original complaint—and which remained wholly unavailable to Plaintiffs until June 7, 2022, when a whistleblower's disclosure revealed it.

Furthermore, a district court recently granted a motion for expedited discovery based on the same newly discovered evidence that Plaintiffs presented in their Motion. *See Missouri v. Biden*, No. 3:22-CV-01213, 2022 WL 2825846 (W.D. La. July 12, 2022) (granting discovery request for preliminary injunction motion). Significantly, the *Missouri* motion for expedited discovery was filed on June 14, 2022 and contained the new information put forth in Plaintiffs' Motion, which was unavailable to them prior to entry of the Court's May 5, 2022 order dismissing and closing the case. *See id.*, ECF No. 30, at 7 (distinguishing case from *Changizi* and others because "[t]hese cases were filed long before most of the States' evidence of a massive federal censorship program became publicly available, and thus they were based on much less extensive allegations of federal censorship activity and joint action, collusion, and coercion.").

Defendants contend that Plaintiffs' new evidence would not have resulted in a different outcome had it been presented to the Court prior to its original judgment. Indeed, according to Defendants, the new evidence merely shows that DHS "engaged in general anti-misinformation efforts comparable to those of the Surgeon General," and thus, they claim, it fails to establish that Plaintiffs have standing. Def. Opp., ECF No. 48, at 7. But the new information includes ample evidence of DHS's coercive actions, undue influence on private third parties, and myriad efforts taken

5

to secretly coordinate the censorship of constitutionally protected speech through private entities. Such evidence plainly substantiates he allegations from the original Complaint regarding the Surgeon General's tweets, public comments and Request for Information (RFI).

Specifically, Defendants argue that the new evidence adds nothing to Plaintiffs' complaint that would "cure [its] deficiencies" in terms of showing causation. They maintain that Plaintiffs *still* have not demonstrated their injuries are traceable to Defendants' actions, rather than to Twitter's "independent" and "voluntary" decisions. *See id.*, at 7-8. Defendants, however, starkly mischaracterize the new evidence, which fortifies Plaintiffs' complaint on each of those fronts. First, the evidence extensively details DHS's frequent communications, meetings, and collusion with Twitter to coordinate the censorship of views that *the government* has deemed dangerous. This demonstrates that Twitter's mounting censorship of protected speech—speech which, not coincidentally, counters the government's viewpoint—is not the product of "independent, discretionary judgments," as Defendants claim. Additionally, Plaintiffs' new evidence includes documentation and details regarding the formation of the "Disinformation Governance Board" ("DGB") within DHS, how DHS created the DGB and tasked it with stopping the spread of misinformation—barely veiled code for censorship—through partnership with private companies, including social media platforms, and how DHS held meetings in secret with Twitter executives to discuss the operationalizing of public-private partnerships between DHS and Twitter, including using Twitter, specifically, to combat misinformation.

The extraordinary level of collaboration and collusion between DHS and a private company—all for the purpose of constructing a censorship apparatus to suppress the protected speech of Americans—is more than sufficient to show that Twitter's past and ongoing censorship of its users

6

are not independent, voluntary actions.² Private parties that are "jointly engaged with state officials in [a] prohibited action are acting 'under color' of law … It is enough that [the private party] is a willful participant in joint activity with the State or its agents." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941–942 (1982). The claim that these documents reveal a willingness on the part of technology companies to work with the government and accomplish its aims, and is thereby lawful, should be rejected. The inherent power imbalance renders this argument inapposite, in that the government can penalize uncooperative companies (and has explicitly stated an intent to do so). At the very least, the question is one of fact for a jury to determine. Thus, Plaintiffs' newly discovered information, which provides extensive evidence of DHS and Twitter's collusive activities in furtherance of speech suppression, goes to the heart of the causation issue and directly contradicts Defendants' claims that Plaintiffs failed to establish a causal link between the federal government's campaign and their censorship on social media.

Indeed, in *Missouri*, the district court concluded that the traceability component of the standing inquiry had been "easily met" as Defendants had coerced and colluded with private third parties to censor "disfavored speakers, viewpoints, and content." *Id.* at 5-6 (Plaintiffs had standing on grounds that "the alleged injuries are 'imminent' and allegedly 'on-going,' due to allegations of social media suspensions, removals of disfavored viewpoints, and censorship."). The district court there also noted—contrary to Defendants' contention—that the plaintiffs met the redressability element of standing, as putting an end to the "alleged suppression of supposed disfavored speakers, viewpoints, and content would address Plaintiff States' alleged injuries." *Id.*, at 6. This case, being virtually identical

---

² New emails made public *just yesterday* establish that CDC officials regularly communicated with personnel at Twitter, Facebook, and Google to censor "vaccine misinformation," including CDC's flagging specific posts and setting up meetings to instruct tech companies on how best to police "misinformation." *Available at* https://freebeacon.com/wp-content/uploads/2022/07/CDC-Emails-to-Big-Tech.pdf.

in relevant respects, should compel the same conclusion. In short, Plaintiffs' new evidence offers, in spades, proof of collusion, coercion, correspondence, and joint action between DHS and Twitter that supplies grounds for granting their Rule 60(b) Motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion for Relief from Judgment, vacate the Order, and allow Plaintiffs to proceed with this action.

Dated: July 28, 2022                  Respectfully,

*/s/ Jenin Younes*
Jenin Younes (*pro hac vice*)
John J. Vecchione (*pro hac vice*)

NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
(202) 869-5210
Jenin.younes@ncla.legal

*/s/ Angela Lavin*
Angela M. Lavin (0069604)
Jay R. Carson (0068526)
Local Counsel
WEGMANHESSLER
6055 Rockside Woods Boulevard North
Suite 200
Cleveland, Ohio 44131
Telephone: (216) 642-3342
Facsimile: (216) 642-8826
AMlavin@wegmanlaw.com

*Attorneys for Plaintiffs*