**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

MARK CHANGIZI, et al.,

*Plaintiffs*,

v.

DEPARTMENT OF HEALTH AND HUMAN
SERVICES, et al.,

*Defendants*.

CASE NO: 2:22-cv-1776

## MOTION FOR LEAVE TO FILE SUPPLEMENT TO MOTION FOR RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60(b)

Plaintiffs respectfully submit this motion for leave to file supplemental information in support of Plaintiffs' pending motion for relief from judgment pursuant to Rule 60(b) (ECF No. 42) ("Rule 60(b) Motion"), requesting that this case be reinstated to the Court's docket. Opposing counsel has not responded to Plaintiffs' query, made yesterday morning via email (August 16, 2022), as to whether the government would consent to this motion to supplement. In the interests of time, Plaintiffs are going ahead and filing.

On May 5, 2022, the Court entered an order (ECF No. 37) (the "Order") granting Defendants' Motion to Dismiss (ECF No. 30). Subsequently, as argued in the Rule 60(b) Motion, new evidence came to light on June 7, 2022, which was unavailable to Plaintiffs prior to the April 28, 2022 hearing and the Court's entry of the Order dismissing and closing the case. So, Plaintiffs filed the Rule 60(b) Motion on June 24, 2022, seeking relief from judgment and to reinstate the case to the Court's docket.

Additional facts have come to light—in only the last few days—while the motion to reopen remains *sub judice*. Plaintiffs now seek leave to supplement the Rule 60(b) Motion with further direct evidence that the Government explicitly (and successfully) pressured Twitter to ban a specific individual from the social media platform for disseminating what members of the Biden Administration deemed Covid-related "misinformation."[1]

Former *New York Times* reporter Alex Berenson acquired a very large following on Twitter as a result of his relentless, vocal critiques of government imposed Covid restrictions. Berenson was permanently suspended from the platform in July of 2021, ostensibly for tweeting that the available vaccines do not stop infection or transmission of the virus.[2] The suspension occurred days after Dr. Anthony Fauci publicly castigated Berenson, calling him a threat to public health, and mere hours after President Biden publicly blamed social media companies for "killing people" by not censoring those who expressed doubts about the safety and efficacy of the vaccines.

Berenson sued Twitter alleging, *inter alia*, that the company had violated its terms of service by banning him, especially in light of personal assurances from high-ups at the company that his account was safe as he had not violated the platform's rules. Through the discovery process, Berenson obtained internal communications between Twitter employees, as well as correspondence between Twitter and federal government employees.

The new evidence, which Berenson released on his Substack account on August 12, 2022, shows that his removal from Twitter was neither an independent nor a voluntary act on the company's part. Rather, it flowed directly from government pressure to suppress the viewpoint of an individual

---

[1] *See* https://alexberenson.substack.com/p/the-white-house-privately-demanded; *see also Berenson v. Twitter, Inc.*, No. C 21-09818 WHA, 2022 WL 1289049 (N.D. Cal. Apr. 29, 2022).

[2] *See* The Editorial Board, *The White House and Twitter Censorship*, THE WALL STREET JOURNAL (Aug. 12, 2022) https://www.wsj.com/articles/biden-and-twitter-censorship-alex-berenson-covid-vaccines-white-house-social-media-11660335186?st=qtzql2d7r8tz986 (last visited Aug. 16, 2022).

whom a federal official described in communications with Twitter as "the epicenter of disinfo" capable of influencing "the persuadable public."  Additionally, correspondence between Twitter employees describe the Government's "really tough" and "pointed" questions about "why Alex Berenson hasn't been kicked off the platform."  "[M]ercifully we had the answers," stated one Twitter employee.  One of those "answers" was to yield to governmental pressure and permanently ban Berenson's Twitter account, notwithstanding the explicitly stated beliefs of Twitter employees that Berenson had not broken any of the company's rules, as the employees themselves observed.[3]

Use of the term "mercifully" denotes the mentality of individuals who consider themselves subordinate to a powerful force; here, the government.  The communications thus bear precisely on the question at hand:  whether Twitter was acting of its own volition in censoring Plaintiffs, or whether the Government was driving that censorship by making social media companies so fearful of repercussions in the form of regulation or other legal action that the company suspended them, as it did Berenson.  While Berenson is not party to this lawsuit, the fate of his Twitter account indicates a broader pattern of government-induced censorship.  Berenson would never have obtained conclusive proof that the Government had perpetuated censorship of his account had the judge thrown his case out prior to discovery.  His success demonstrates that the similar allegations at issue in the Complaint here have merit that can likewise be proven if discovery is permitted.

Plaintiffs have a First Amendment right to receive information.  "[W]here a speaker exists …, the protection afforded is to the communication, to its source and to its recipients both." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 756 (1976).  Indeed, "the right to receive ideas follows ineluctably from the sender's First Amendment right to send them." *Bd. of Educ., Island*

---

[3] "I've taken a pretty close look at [Berenson's Twitter] account and I don't think any of it's violative," stated one Twitter employee in a Slack conversation a few minutes following the Government's "really tough question about why Alex Berenson hasn't been kicked off." https://alexberenson.substack.com/p/the-white-house-privately-demanded.

*Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982). The Government's indisputable involvement in censoring Alex Berenson has deprived Plaintiffs of their First Amendment rights to hear his views (not to mention the perspectives of many other individuals throughout the world who have been censored by the Government for expressing unpopular views pertaining to Covid).[4]

Plaintiffs also seek to supplement the Rule 60(b) Motion with guidance just released by the Centers for Disease Control and Prevention ("CDC") on August 11, 2022.[5] The CDC now admits that "Covid-19 prevention recommendations no longer differentiate based on a person's vaccination status." In other words, according to the agency, there is no reason to treat vaccinated and unvaccinated individuals differently. This position directly contradicts CDC's prior "guidance" (that was treated as though it carried the weight of law for well over a year) which resulted in censorship and numerous First Amendment violations, including those committed against Plaintiffs and Alex Berenson, for statements made on social media platforms that ran contrary to the Government's previously favored COVID policy. While those views were deemed "misinformation" for a year, they are now widely accepted as true. That the Government had Twitter remove accounts of people who spoke what is now recognized to be the truth sheds light on the insidious, pernicious nature of this censorship.

In sum, the new evidence demonstrates that the allegations in the Complaint are not merely speculative, and good cause exists to reopen the case and allow Plaintiffs to commence discovery. Plaintiffs respectfully submit that the Court should review the newly discovered evidence in assessing the motion to reopen now before it. The criteria of Rule 60(b) are plainly satisfied. The new evidence was unavailable to Plaintiffs until well beyond the period in which they could have moved for a new

---

[4] *See* First Amended Complaint, *State of Missouri ex rel. Schmitt v. Biden*, No. 3:22-cv-01213 (W.D. La. 2022).

[5] *Summary of Guidance for Minimizing the Impact of COVID-19 on Individual Persons, Communities, and Health Care Systems – United States, August 2022*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Aug. 11, 2022).

trial under Rule 59(b).  It is both material and controlling to Plaintiffs' complaint, and it directly addresses the Court's concerns in granting Defendants' motion to dismiss.  Furthermore, the evidence directly rebuts the Government's prior assertions that there is no proof that Twitter's acts of censorship have been anything but independent and voluntary, free of undue governmental influence or coercion.  Rather, the new evidence reveals that this contention is flatly untrue.  Thus, for the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion for leave to file a supplement to Plaintiffs' Rule 60(b) Motion to reopen this case.

Dated: August 17, 2022                                Respectfully,

/s/ *Jenin Younes*
Jenin Younes (*pro hac vice*)
John J. Vecchione (*pro hac vice*)

NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
(202) 869-5210
Jenin.younes@ncla.legal

/s/ *Angela Lavin*
Angela M. Lavin (0069604)
Jay R. Carson (0068526)
Local Counsel
WEGMANHESSLER
6055 Rockside Woods Boulevard North
Suite 200
Cleveland, Ohio 44131
Telephone: (216) 642-3342
Facsimile: (216) 642-8826
AMlavin@wegmanlaw.com

*Attorneys for Plaintiffs*